THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES RICHARDSON, Appellant.

First Department, April 13, 1976

*William M. Kunstler* and *Rosanne L. Kaplan* for appellant.

*Jane Louise Koch* of counsel *(Mario Merola, District Attorney),* for respondent.

KUPFERMAN, J. In this bizarre situation, defendant was

indicted and charged with the crimes of felony-murder (with escape serving as the predicate felony); manslaughter in the second degree; attempted murder; escape in the second degree; reckless endangerment in the second degree; possession of a weapon as a felony; and criminal possession of stolen property in the third degree. After a jury trial, he was convicted of manslaughter in the second degree (Penal Law, § 125.15, subd 1) for recklessly causing the death of another, possession of a weapon as a felony, and criminal possession of stolen property in the third degree (Penal Law, § 165.40) (a New York State Department of Correction badge). Defendant was sentenced to concurrent indeterminate terms of 10 years on the manslaughter conviction, and 7 years on the weapons conviction, and to an unconditional discharge on the stolen property count.

The origins of the altercation, which led to the unhappy outcome, are in dispute, but in the view we take of the matter, it is unnecessary to resolve them.

In June, 1972 at about 5:00 P.M., the defendant was in the Hunts Point subway station in The Bronx on his way to work as a clerk at a hospital. The deceased, an off-duty transit patrolman, dressed in civilian clothes, approached the defendant and placed him up against the wall at gunpoint. What transpired between them to bring about the encounter and the ensuing exchange of bullets is not clear, but from the postarrest statements made by the defendant at the hospital (and he questions their admissibility), it appears that the deceased showed his gun and his badge and asked for the defendant's name and destination. The two men then argued and were vituperative with each other, at which point, it is alleged that the deceased stepped back and shot the defendant in the groin.* The defendant then pulled a .32 calibre Clerke revolver and fired at the deceased. Two .32 calibre bullets struck the deceased in the right upper shoulder. The revolver was later found by a civilian who stated that it contained four spent shells and one live round, but it was not produced at the trial with the explanation that the civilian had sold the gun.

A Correction Department badge was found on the station platform. It belonged to a woman who was a former correction officer, and whose wallet containing the badge was missing the

---

* There is some question as to whether the defendant did not shoot himself in the groin, as he took out his revolver. He also was shot in the shoulder, that one clearly by the deceased.

previous year at a restaurant and was returned to her, minus the badge, by the defendant who told her he had found the wallet that way, without the badge. This badge was the basis of defendant's conviction for criminal possession of stolen property.

After the initial shooting incident, the defendant ran up the stairs leading from the subway station followed by the deceased. There were more shots. Two uniformed officers on duty were attracted to the subway station by the gunfire. As defendant ran up the stairs, he shouted "someone is shooting" or words to that effect. One of the patrolmen took him into custody while the other one descended the subway stairs with his gun drawn. The defendant broke free and was arrested by other officers after a short chase, during which he discarded his revolver. The officer descending the stairs saw a man in civilian clothes, the deceased, coming up the stairs, holding a gun pointing up, and the officer emptied the revolver at him, three bullets of which entered his body, one striking a major artery.

Based on the foregoing, the defendant was convicted of recklessly causing the death of another person. The term "recklessly" is defined in subdivision 3 of section 15.05 as follows: "A person acts recklessly with respect to a result * * * [in this case the death of the off-duty transit patrolman] when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur * * * The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."

The testimony of the New York City Medical Examiner, Dr. Michael Baden, the respected forensic pathologist, was to the effect that the bullet fired by the police officer which struck the major artery, could alone have caused death, but he could not state with reasonable medical certainty that the two bullets fired by the defendant, which struck no vital organ, could have caused death. Further, the testimony for the defense by his expert medical witness, testifying only from the autopsy report, was that the two bullets fired by the defendant did not contribute to the death. Accordingly, it must be held that guilt on this basis was not proven beyond a reasonable doubt.

Whether the recklessness required by the statute may be attributed to the defendant in the strange circumstances of this case, requires an analysis of *People v Kibbe* (35 NY2d

407). In that case, the defendants robbed an intoxicated individual and left him on a dark country road at night, without his eyeglasses and half-naked, with visibility obscured by heavy winds which blew previously fallen snow across the road in zero temperature. The victim was subsequently struck by a truck, as he was attempting to signal the driver for help, and was killed. The murder conviction was sustained under subdivision 2 of section 125.25 of the Penal Law which, among other things, requires reckless conduct. The Court of Appeals stated by GABRIELLI, J. (p 412): "However, to be a sufficiently direct cause of death so as to warrant the imposition of a criminal penalty therefor, it is not necessary that the ultimate harm be intended by the actor. It will suffice if it can be said beyond a reasonable doubt, as indeed it can be here said, that the ultimate harm is something which should have been foreseen as being reasonably related to the acts of the accused."

We do not find that the conduct of the defendant reaches the same level of foreseeability with respect to the death of the off-duty transit policeman. Accordingly, the defendant's convictions should be modified on the law and the facts to vacate the conviction for manslaughter in the second degree. The defendant remains guilty of the crimes of possession of a weapon as a felony, and criminal possession of stolen property in the third degree. In view of the foregoing, we vacate the sentence for possession of a weapon as a felony and remand to the sentencing Judge to exercise his discretion with respect to the appropriate sentence to be imposed on that count.

We have examined the other assignments of error by the defendant and find them without sufficient substance in view of the overwhelming proof with respect to his possession of the gun and of the badge. (See *People v Crimmins*, 38 NY2d 407, 411.)

STEVENS, P. J., MARKEWICH, BIRNS and CAPOZZOLI, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered on December 13, 1974, unanimously modified, on the law and the facts, to vacate the conviction for manslaughter in the second degree, and to vacate the sentence for possession of a weapon as a felony and to remand to the sentencing Judge to exercise his discretion with respect to the appropriate sentence to be imposed on that count.