THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROGER CWIKLA and WILFRED FORD, Appellants.

First Department, December 8, 1977

APPEARANCES OF COUNSEL

*Henry Winestine* of counsel *(William J. Gallagher* and *William E. Hellerstein,* attorneys), for Roger Cwikla, appellant.

*Eleanor Jackson Piel* for Wilfred Ford, appellant.

*Allen H. Saperstein* of counsel *(Mario Merola, District Attorney),* for respondent.

## OPINION OF THE COURT

BIRNS, J. P.

Defendants were indicted for the crimes of felony murder, common-law murder, possession of a dangerous instrument as a misdemeanor and two counts of burglary in the first degree (Penal Law, § 140.30, subds 2 and 3).

They were convicted, after a jury trial, of possession of a dangerous instrument as a misdemeanor and burglary in the first degree (Penal Law, § 140.30, subd 3) and acquitted of the other charges.

Each defendant was sentenced May 30, 1975 on the convictions to an unconditional discharge on the possession count and 7 to 21 years on the burglary count. Both defendants are presently incarcerated.

Defendant Cwikla previously was tried alone (before GOMEZ, J. and a jury) on the charges under the indictment and found guilty of felony murder, manslaughter in the second degree,

possession of a dangerous instrument as a misdemeanor, and both counts of burglary in the first degree. On appeal therefrom, his convictions were reversed and a new trial ordered because of prosecutorial misconduct and errors committed by the court *(People v Cwikla,* 45 AD2d 584). Subsequently, codefendant Ford was apprehended and a joint trial was held, eventuating in the convictions herein appealed.

Essentially, the prosecution's theory was that on January 5, 1972 defendants, together with one Thomas Cox, burglarized the apartment of Martin Kubanik located at 356 St. Ann's Avenue, Bronx, that in the course of the burglary Mr. Kubanik was tied with a rope and gagged with a handkerchief stuffed into his mouth, and that as a result he died of asphyxiation. Thomas Cox, having pleaded guilty to manslaughter in the first degree, testified for the People.

Defendants raise various points on this appeal, only three of which require discussion.

They urge that there is no evidence to support their conviction for possession of a dangerous instrument and that, accordingly, their conviction for burglary in the first degree under subdivision 3 of section 140.30 of the Penal Law which provides that a person is guilty of burglary in the first degree where (all other elements of burglary being satisfied) he "[u]ses or threatens the immediate use of a dangerous instrument" must also fall. They assert that a mere handkerchief cannot be construed as a dangerous instrument.

We conclude, however, that a handkerchief may be considered a dangerous instrument. Defendants were found guilty of possession of a dangerous instrument as a misdemeanor pursuant to subdivision 9 of former section 265.05 of the Penal Law which in pertinent part proscribed "possession [of] any * * * dangerous * * * instrument * * * with intent to use the same unlawfully against another." Subdivision 13 of section 10.00 of the Penal Law, in turn, defines a "dangerous instrument" as "any instrument, *article* or substance * * * which, *under the circumstances in which it is used* * * * is readily capable of causing death or other serious physical injury." (Emphasis added.) An article not designed as a weapon may ordinarily have a perfectly legitimate function but in terms of temporary use may fit the definition of a "dangerous instrument" (Practice Commentaries by Arnold D. Hechtman, McKinney's Cons Laws of NY, Book 39, Penal Law, § 10.00, p 21).

Defendants contend, further, that a handkerchief is not a "dangerous instrument" because it is not *readily* capable of causing death or other serious physical injury" (emphasis added), since the victim must first be otherwise restrained in order for the handkerchief to inflict death or other serious physical injury. Moreover, they urge, it is clear from the evidence that the gagging of Mr. Kubanik was to avoid injury, not to kill or injure him. They claim, further, that if the statute is construed to include a handkerchief, it would be void for vagueness since "[n]o one would be able to determine what homely belongings might turn out to be dangerous instruments." Finally, they claim that the statute cannot be extended to make criminal the possession of objects only remotely related to those proscribed by the Legislature.

█ We are of the opinion that the evidence was sufficient to justify the finding that the handkerchief was a dangerous instrument, and further, that the statute as so interpreted, is not void for vagueness.

Because the essence of "dangerous instrument" is the manner in which the item is used, and inasmuch as the definition refers to any instrument, article or substance, even ordinary items are included within its scope whenever they are "readily capable of causing death or other serious physical injury". Here a 74-year-old man was left bound around his wrists and feet, and was gagged. The gag was found partially inserted in the victim's mouth and tied by two knots in the back of his neck. As such, it could be anticipated that under the circumstances, the gag could cause death or other serious physical injury to the victim, or at least the jury could so find. And, further, interpreting the statute in such a manner does not make it overly broad or vague, for what is proscribed is not the possession of an ordinary object under ordinary circumstances but possession of such object under circumstances in which it is readily capable of causing death or other serious physical injury.

Defendant Ford, in a related point, urges that the finding that defendants did not cause the death of Mr. Kubanik (i.e., the acquittal of felony murder) or did not cause him physical injury in the commission of the burglary (i.e., acquittal of burglary in the first degree under Penal Law, § 140.30, subd 2) is repugnant to the finding that the handkerchief was a dangerous instrument (on which the guilty verdicts of possession of a dangerous instrument and burglary in the first

degree under subdivision 3 of section 140.30 of the Penal Law were predicated) and indicates the jury's disbelief of Cox's version of the circumstances of the crime, namely, how Mr. Kubanik was tied and the handkerchief used.

■ This argument lacks merit. Inconsistency in a verdict, even if that were the case here, does not invalidate it, since each count is treated separately. *(People v Pugh,* 36 AD2d 845, affd 29 NY2d 909, cert den 406 US 921.) Only repugnance in a verdict will invalidate it, and repugnance can only occur where the crimes contain identical elements *(People v Pugh, supra).*

■ Here, the elements of the crimes for which defendants were acquitted were not identical to those involved in the crimes for which they were convicted. The dangerous instrument count merely required a finding that the article, under the circumstances used, was "readily capable of causing death or other serious physical injury" and not that it did, in fact cause death or physical injury. Hence the jury could have found that defendants did not cause the victim's death, albeit a dangerous instrument was used.

We now consider defendant Cwikla's assertion that he was denied due process when he received a more severe sentence after retrial than on the first trial.

Upon the first trial, after conviction, Cwikla was sentenced to a life term with a minimum of 15 years for the crime of felony murder, an indeterminate term not to exceed 15 years for the crime of manslaughter in the second degree, an indeterminate term not to exceed 15 years on each of the two crimes of burglary in the first degree, all to be served concurrently, and an unconditional discharge for the crime of possession of a dangerous instrument as a misdemeanor.

Following reversal by this court of the original convictions and upon the new trial ordered, Cwikla could only be sentenced on possession of a dangerous instrument as a misdemeanor and one count of burglary in the first degree, inasmuch as the jury acquitted him and his codefendant Ford of all other charges.

It was within this framework of a reduced number of convictions that the trial court at the second trial considered it legally appropriate to sentence Cwikla to a term of 7 to 21 years on the burglary charge.

In *North Carolina v Pearce* (395 US 711) the Supreme Court

formulated a rule designed to eliminate the possibility of judicial vindictiveness in sentence at a second trial after a defendant's successful appeal from his conviction at a first trial. It defined (pp 715-716) the issue as involving "the constitutional limitations upon the imposition of a more severe punishment after conviction for the same offense upon retrial." The Supreme Court said that a longer sentence on retrial did not violate double jeopardy, or due process where the Trial Judge imposed a greater sentence after retrial based on "events subsequent to the first trial" (p 723) but cautioned (p 726) that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information *concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.*" (Emphasis added.)

■ Therefore, to accept as valid a more severe sentence, the reasons for such sentence must rest upon the (1) conviction of defendant for the same offense upon retrial, and (2) identifiable conduct on the part of defendant occurring after the time of the original sentence, which must appear in the record.

In justification of the imposition of a greater sentence on the burglary charge, the court stated its reasons, the most pertinent of which are as follows:

"I submit that this burglary, this breaking and entering and this waylaying Martin Kubanik was a serious and cruel and inhuman course of conduct on the part of this defendant and his two accomplices.

"I submit that the burglary of that apartment, the binding and gagging of that individual was indeed cruel and inhuman punishment, cruel and inhuman treatment. It is a clear case of sadism on the part of the individuals who carried out this act."

It is obvious that the trial court's · imposition of a more severe sentence did not rest upon any "identifiable conduct" occurring after Cwikla was first sentenced and hence did not meet the test required by *Pearce (supra).*

The trial court must have sensed this failure to meet constitutional standards because, as shown herein, it further justified its sentence on the basis of an "aggregate" test. The court's comments in this connection were as follows:

"It should be noted, however, that Roger Cwikla was not

sentenced solely upon his conviction for burglary in the first degree at the end of the first trial but also for his conviction for manslaughter in the second degree, possession of a dangerous instrument as a misdemeanor and for murder. The sentence of the first trial court as it related to all of those crimes as an aggregate is what is controlling here and not merely the sentence imposed on any one of these crimes standing alone.

"When viewing the sentencing of the first trial court as an aggregate we observe that the defendant Cwikla was sentenced to fifteen years to life on his conviction for murder which was to run concurrently with his sentence of conviction of manslaughter in the second degree and two counts of burglary in the first degree.

"Viewed in this light it becomes apparent that Cwikla's sentence of fifteen years to life on his murder conviction is what is controlling here as far as this resentence is concerned, as far as this sentence at this time is concerned, and not zero to fifteen years as he suggests."

The District Attorney, urging the "aggregate" test as proper, argues on this appeal that a more severe sentence was not imposed upon Cwikla. To reach this conclusion, the District Attorney compares the aggregate sentences of defendant's convictions at the first trial with the aggregate sentences for his convictions at the second trial.

The District Attorney relies for the validity of this position upon *United States v Clutterbuck* (445 F2d 839, 840) which held that "[a]ny sentence on remand less severe than the sentence originally imposed would avoid conflict with the *Pearce* rule." That case, however, was quite different. There defendant was first sentenced to four concurrent terms of 10 years. On resentence, he received four consecutive terms of one year each. Defendant on appeal argued unsuccessfully that his sentence should have been concurrent. That was rejected, because even four consecutive terms of one year were less than the original sentence on one count.

No case is cited by the District Attorney which demonstrates that the Supreme Court does not intend to abide by the rule enunciated in *Pearce (supra)*. (For the latest discussion of the *Pearce* rule, see *United States v Ricard*, 563 F2d 45.)

We must agree that with Cwikla's acquittal on the felony murder charge the death of Mr. Kubanik could no longer be considered by the court as a factor in determining the sen-

tence to impose upon Cwikla after his second trial. (See *People v Richardson*, 51 AD2d 462, 465.)

However, the trial court appears to have concluded that the sentence of Cwikla on the burglary charge at the first trial was merely incidental to the sentence of 15 years to life Cwikla received on the murder charge, and, therefore, that at the end of the second trial it had the right to disregard the limits of the sentence imposed for burglary at the first trial and impose a sentence for that crime which matched the totality of the circumstances of the case. To adopt this view, however, would, as the Supreme Court pointed out in *Pearce (supra)* have the undesired effect of discouraging appeals. *(Pearce, supra,* p 725; see, also, *People v Vann,* 54 AD2d 356, 357-358.)

■ We cannot agree with the view by the second trial court that "[t]he sentence of the first trial court as it related to all of those crimes as an aggregate is what is controlling here and not merely the sentence imposed on any one of these crimes standing alone." Each crime of which defendant is sentenced must stand alone and be examined on the basis of the evidence supporting that conviction. The thesis is unacceptable that any court, trial or appellate, may say that a trial court which imposed a sentence on any count did not act in a deliberate judicial fashion with respect to that count.

■ There is nothing in the Penal Law which requires a court in sentencing a defendant for more than one crime to make the sentence for any crime depend upon the sentence of any of the others, except to consider whether the sentences shall be consecutive or concurrent.

We cannot find any "identifiable conduct" in accord with the *Pearce* rule which would legally justify the sentence of 7 to 21 years in this case for burglary in the first degree. As the Supreme Court declared: "Due process of the law * * * requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *(North Carolina v Pearce,* 395 US 711, 725, *supra.)* If we were to find this sentence valid, we would be, in effect, penalizing the defendant for interposing a successful defense to the charge of murder, after a successful appeal. In such circumstances can it not be said that the court is vindictive as a matter of law? To ask this question is to provide the answer.

■ We do not sit to ignore as merely incidental a sentence

which, on reflection, may not match the enormity of the criminal behavior involved. Nor can we. *(Pearce, supra.)* In a criminal case, a sentence must represent the considered judgment of the judicial officer presiding at the trial taking into account all relevant circumstances. Where a defendant has been sentenced under a multicount indictment, a conviction under any count is to be considered, as it should be, a separate crime requiring upon sentence a deliberate judicial act.

In light of the above, we are of the opinion that the sentence of Cwikla of 7 to 21 years upon his conviction after retrial of burglary in the first degree should be reduced on the authority of *Pearce (supra)*.

■ We conclude further that Ford's sentence of 7 to 21 years upon his conviction of burglary in the first degree should also be reduced as excessive and an abuse of discretion. Such sentence imposed upon Ford for the same crime to which Cwikla, upon resentence, could receive an indeterminate sentence of not more than 15 years is unduly harsh and severe. In these circumstances, the sentence of Ford is disparate and not rationally reconcilable. *(People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951.)

Accordingly, the judgment of the Supreme Court, Bronx County (WARNER, J.), rendered May 30, 1975, convicting defendant Cwikla, after a jury trial, of the crimes of possession of a dangerous instrument as a misdemeanor and burglary in the first degree should be modified, on the law, only to the extent of reducing the sentence imposed upon defendant Cwikla for the crime of burglary in the first degree to an indeterminate term not to exceed 15 years (CPL 470.15, subds 2, 3, 4, par [c]), and judgment of the Supreme Court, Bronx County (WARNER, J.), rendered May 30, 1975, convicting defendant Ford, after a jury trial, of the crimes of possession of a dangerous instrument as a misdemeanor and burglary in the first degree should be modified, as a matter of discretion in the interest of justice, only to the extent of reducing the sentence imposed upon defendant Ford for the crime of burglary in the first degree to an indeterminate term not to exceed 15 years (CPL 470.15, subd 2, par [c], subd 3 and CPL 470.20, subd 6), and otherwise the convictions should be affirmed.

MARKEWICH, J. (concurring in part and dissenting in part). My colleague has based his conclusion that Cwikla's sentence should be reduced on the holding in *North Carolina v Pearce*

(395 US 711) particularly the excerpt therefrom which lays down the rule that a Judge who increases a defendant's sentence after a new trial has the burden, if the increase of sentence is to be deemed constitutional, of stating his reasons therefor, which must be based upon an objective showing of "identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" (p 726). It provides an interesting excursion into the judicial process to find a rational basis for such a rule.

Two cases were reviewed together in this opinion: *Pearce v State of North Carolina* (397 F2d 253) and *Simpson v Rice* (396 F2d 499). Both cases were decided below on the authority of *Patton v North Carolina* (381 F2d 636, cert den 390 US 905), to the effect that "the risk of a greater sentence * * * on retrial may prevent defendants who have been unconstitutionally convicted from attempting to seek redress" (p 639). *Patton* was so quoted in the District Court opinion in *Rice v Simpson* (274 F Supp 116, 120), which was adopted as its own by the Court of Appeals (396 F2d 499, 500). In *Pearce,* the Court of Appeals, in affirming the District Court's grant of relief from an increased sentence (397 F2d 253), did so on the authority of *Patton* (p 254), declining to reconsider that holding. The principle that a sentencing Judge may not increase punishment on retrial in retaliation for a defendant's successful attack on a prior conviction is therefore well established. And it is so profoundly right that it must be accepted. However, the "rule" set out on page 726 of *Pearce* is without basis whatever in the record except as it provides a vehicle for affirmance in *Pearce*—not in *Rice,* where a definite basis appears for a finding of vindictiveness: "I would accept the Federal District Judge's conclusion that the State in this case attempted to punish Rice for lawfully challenging his conviction" (BLACK, J., 395 US 711, 739). But in *Pearce,* "there is not a line of evidence to support the slightest inference that the trial judge wanted or intended to punish Pearce for seeking post-conviction relief." (BLACK, J., 395 US 711, 740.) There being no such evidence, the *Pearce* majority had to enact— Justice BLACK called it "pure legislation if there ever was legislation" (p 741)—what amounts to a presumption that a Judge resentencing to a longer term on retrial does so out of vindictiveness unless rebutted by affirmative proof of defendant's postoriginal sentence conduct. Nor is there a definition of what conduct would justify a longer term. Nor is it reasona-

ble or practical to imagine any such conduct, for most such defendants would have been in jail where untoward conduct would be otherwise punishable. In short, this would actually be an irrebuttable presumption in virtually all such cases. A more reasonable standard would be "any objective, identifiable factual data, not known to the trial judge at the time of the original sentencing proceeding." (WHITE, J., p 751.)

Regardless of what appears above, the Supreme Court is the Supreme Court, and the rule of law is to be respected even when aberrant. Therefore, on constraint, reluctantly, I join the majority as to the reduction of Cwikla's sentence.

Not so as to Ford. Regardless of the dispositon as to Cwikla, Ford's sentence should not be disturbed. There is no basis whatever for a finding of vindictiveness based on successful appeal in Ford's case; he was not apprehended until after the first trial, and appeared only in the second trial. As to disparity, cited by the majority as the reason for reduction of Ford's sentence to match Cwikla's, it is not a basis for reduction of sentence, and is appropriate to the character of this defendant and his crime. *(People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951.) If Cwikla is the beneficiary of a windfall, I see no reason why his partner in crime should have the same benefit.

LANE and LYNCH, JJ., concur with BIRNS, J. P.; MARKEWICH, J., concurs as to defendant Cwikla and dissents as to defendant Ford, in an opinion.

Judgment, Supreme Court, Bronx County rendered on May 30, 1975, modified, as a matter of discretion in the interest of justice, only to the extent of reducing the sentence imposed upon defendant [Ford] for the crime of burglary in the first degree to an indeterminate term not to exceed 15 years (CPL 470.15, subd 2, par c; subd 3 and CPL 470.20, subd 6), and otherwise affirmed.

Judgment, Supreme Court, Bronx County rendered on May 30, 1975, unanimously modified, on the law, only to the extent of reducing the sentence imposed upon defendant [Cwikla] for the crime of burglary in the first degree to an indeterminate term not to exceed 15 years (CPL 470.15, subds 2, 3, 4, par [c]), and otherwise affirmed.