OPINION OF THE COURT
Ira R. Globerman, J.
Where the defendant is charged with committing crimes using an "imitation pistol,” must the People prove that the "imitation pistol” was manufactured to be just that — a toy or imitation? Or may a defendant be convicted of crimes involving an "imitation pistol” where the object was manufactured to be a firearm or where the intended nature of the object cannot be determined? This opinion defines the term "imitation pistol” as used in Administrative Code of the City of New York former § 436-5.0 (g)[1] (renum § 10-131 [6] [g]) and Penal Law § 265.01[2] and in other counts of an information charging related crimes.
At the defendant’s jury trial in the instant case, six witnesses testified that the defendant used a pistol to threaten the complainant trafile agents who were about to tow the defendant’s car. Although the pistol was never fired, never recovered and tested, nor even seen after it was brandished, each of the witnesses had no doubt that the pistol was a real firearm.
Five counts were submitted to the jury, each referring to *576 the object used in threats as an "imitation pistol.”[3] The first count charged the crime of possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), in that the defendant possessed an "imitation pistol” with the intent to use it unlawfully against another. The second count charged the defendant with violating Administrative Code § 436-5.0 (g) in that the defendant possessed an imitation pistol. The third count charged the defendant with obstructing governmental administration in the second degree (Penal Law § 195.05) in using an "imitation pistol” to threaten the agent who was about to tow his car. The final two counts charged the defendant with menacing (Penal Law § 120.15) in that the defendant threatened to shoot the person named in each count by pointing an "imitation pistol” at him.
The defendant’s request that the jury be charged that the defendant must be acquitted unless the prosecution prove beyond a reasonable doubt for all counts that the pistol used was a toy or model pistol, as opposed to a pistol manufactured to be a true firearm, was denied as to all counts except the Administrative Code violation.
After the defendant was acquitted of the Administrative Code violation and convicted of all remaining charges, he moved pursuant to CPL 330.30 to set aside the guilty verdicts on the grounds that the definition of "imitation pistol” charged as to those counts constituted reversible error. The motion was denied and this opinion is being filed in explanation of the decision and charge given.
Subdivision (2) of Penal Law § 265.01[4] groups imitation pistols with a wide variety of other non-per se weapons. The emphasis in subdivision (2) is not on the nature of the object itself but rather on its use "as a weapon. As to any other use or possession, the statute is silent.” (People v Webb, 78 Misc 2d 253, 256 [Crim Ct, NY County 1974].) The Legislature viewed such objects as capable of both lawful and unlawful uses and accordingly separated them from the per se weapons classed in subdivision (1) of Penal Law § 265.01. (See, People v Talbert, *577 107 AD2d 842 [3d Dept 1985]; People v Persce, 204 NY 397, 402 [1912].)
Because imitation pistols and the other objects listed in subdivision (2) are not weapons per se, a violation of that subdivision cannot be established by their mere possession; the object must be possessed with the intent to use it unlawfully against another person.[5] (People v Charles, 9 Misc 2d 181 [Ct Spec Sess, NY City 1958]; Matter of Don R. B., 66 Misc 2d 279 [Fam Ct, Kings County 1971].)
Subdivision (2) of Penal Law § 265.01, after specifically naming a wide variety of prohibited items, concludes with a general prohibition of "any other dangerous or deadly instrument or weapon”. The Penal Law (§ 10.00 [13]) broadly defines a dangerous instrument as "any instrument, article or substance, including a 'vehicle’ as that term is defined in this section, which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury.” Unlike the definition of a deadly weapon (Penal Law § 10.00 [12]), which specifically enumerates those items included within the category, the dangerous instrument subdivision " 'makes no attempt to give an absolute definition of the term or to provide a list of items which can be considered dangerous instruments. Instead . . . any "instrument, article or substance,” no matter how innocuous it may appear to be when used for its legitimate purpose, becomes a dangerous instrument when it is used in a manner which renders it readily capable of causing serious physical injury . . . The object itself need not be inherently dangerous. It is the temporary use rather than the inherent vice of the object which brings it within the purview of the statute.’ ” (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 10.00, at 22, quoting People v Carter, 53 NY2d 113, 116 [1981].)
Even objects which are in themselves ordinary and benign have been held to qualify as "dangerous instruments” within the meaning of the Penal Law. (See, e.g., People v Ford, 60 AD2d 40 [1977], revd on other grounds 46 NY2d 434 [handker *578 chief partially inserted in the mouth of 74-year-old victim and tied by two knots in the back of his neck was a "dangerous instrument” within meaning of section 265.01 proscribing possession of dangerous instrument with intent to use it unlawfully against another]; People v Cwikla, 46 NY2d 434 [1979] [handkerchief used to gag victim leading to death by asphyxiation was a dangerous instrument within meaning of subd (13) of Penal Law § 10.00]; People v Carter, supra [rubber boots on defendant’s feet were a dangerous instrument when used to stomp head and face of victim]; People v Galvin, 65 NY2d 761 [1985] [the sidewalk was a dangerous instrument where the victim’s injuries resulted from the pounding of his head against the pavement]; People v Ozarowski, 38 NY2d 481 [1976] [a baseball bat was a dangerous instrument when used to strike the victim in the head and thereby fracture the victim’s skull].)
In view of the varied and perhaps limitless number of items potentially qualifying as "dangerous instruments” for purposes of subdivision (2) of Penal Law § 265.01, to require proof beyond a reasonable doubt of the imitation nature of a pistol would impose an incongruous burden on the prosecution. It would, indeed, defy logic and fairness to, on the one hand, adjudge a handkerchief a dangerous instrument and, on the other hand, to subject the imitation nature of an object resembling a pistol to strictest scrutiny by requiring proof that the pistol be a model or toy rather than a true pistol. Accordingly, I ruled that the toy or imitation nature of the pistol need not be proven as an element of the charge. Rather, the jury was instructed they might find that the defendant possessed an imitation pistol if it were shown that the object in question so resembled a real pistol that a reasonable person under the circumstances of its use would have believed it to have been real. This instruction comports with the purpose of Penal Law § 265.01, to wit, the criminalization of imitation pistols when they are used with an unlawful intent. This instruction also comports with the definition of imitation pistol set forth in People v Webb (supra, at 254), where the court, emphasizing that "[u]nder the Penal Law, an imitation pistol must be given its broadest definition,” defined it as "any object which resembles an actual pistol in shape and/or function”.
For the same reasons, the jury was instructed to apply the broad definition of imitation pistol given in the charge on the section 265.01 (2) count for the remaining counts of the *579 information charging menacing (Penal Law § 120.15) and obstructing governmental administration (Penal Law § 195.05) through use of the imitation pistol.
Unlike subdivision (2) of Penal Law § 265.01 which outlaws imitation pistols only when they are possessed with the intent to use unlawfully against another, Administrative Code former § 436-5.0 (g)[6] makes unlawful only a specific subclass of imitation pistols, i.e., those substantially duplicating an actual pistol, unless it is colored in colors other than black, blue, silver or aluminum and has a closed barrel.
The New York City Council’s stated purpose in enacting former section 436-5.0 was " 'to prevent the sale, possession or use of models so closely copied from actual weapons as not to be readily discernible as toys.’ ” (People v Webb, supra, at 258.) The ordinance is "directed specifically at those imitation pistols or revolvers which are so designed that they may readily be mistaken for real guns so 'as to be used or usable for nefarious purposes’.” (People v Judiz, 38 NY2d 529, 532 [1976], quoting 1 Proceedings of Council of City of NY, at 74 [1955].) Thus, unlike the Penal Law which "contemplates an imitation pistol in the reality of its use * * * the Administrative Code contemplates an imitation pistol in the reality of its appearance.” (People v Webb, supra, at 254.) While "[a] toy gun which would fool nobody is still illegal under the State law if used with criminal intent[,] [u]nder the city ordinance, such an obvious toy is not regulated at all.” (People v Judiz, supra, at 532.)
In the case of Matter of Michael R. (61 NY2d 316, 320 [1984]) the Court of Appeals ruled that Administrative Code former § 436-5.0 (g) prohibited possession solely of objects that were toys or imitation pistols, holding that "[a] real pistol or revolver, even though inoperable, simply is not a 'toy or imitation’.” Accordingly, for the count charging possession of an imitation pistol in violation of the Administrative Code former § 436-5.0 (g), the jury was instructed that to satisfy its burden, the prosecution must prove beyond a reasonable doubt that the item possessed was never designed to be a usable firearm but was an imitation pistol, i.e., a model of a pistol or revolver so closely copied from actual weapons as not to be readily discernible as a toy.[7]
*580 Since the singular focus of the Administrative Code provision is the criminalization of possession of a small, specific subclass of imitation pistols without regard to the possessor’s intended use, the appropriation of this narrowly drawn definition for a Penal Law section (§ 265.01 [2]) requiring specific intent to use unlawfully against another would conflict with the differing purposes of the statutes. Defendant’s request to so charge was therefore denied.

. Administrative Code of the City of New York former § 436-5.0 (g) provides in pertinent part that: "[i]t shall be unlawful for any person to sell or offer for sale, possess or use or attempt to use or give away, any toy or imitation pistol or revolver which substantially duplicates an actual pistol or revolver, unless said imitation or toy pistol or revolver shall be colored in colors other than black, blue, silver or aluminum, and further provided that the barrel of said toy or imitation pistol or revolver shall be closed with the same material of which the toy or imitation pistol or revolver is made for a distance of not less than one-half inch from the front end of said barrel.”

. The statute reads in pertinent part as follows:
"[a] person is guilty of criminal possession of a weapon in the fourth degree when:
"(1) He possesses any firearm, electronic dart gun, gravity knife, switchblade knife, pilum ballistic knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot; or
"(2) He possesses any dagger, dangerous knife, dirk, razor, stiletto, imitation pistol, shirken or 'Kung Fu star’ or any other dangerous or deadly instrument or weapon with intent to use the same unlawfully against another”.

. In the absence of evidence of firing or a ballistics report, the prosecution could not prove the pistol used was operable. Therefore, the defendant could not be charged with possessing a firearm, e.g., Penal Law §§ 265.01, 265.02 or 265.03. (People v Grillo, 15 AD2d 502, affd 11 NY2d 841; People v Harvin, 126 Misc 2d 775 [Crim Ct, Bronx County 1984] [ballistics test necessary to convert complaint into information for Penal Law § 265.01 (1)].)

. See, n 2, supra, for text of statute.

. The importance of the unlawful intent requirement for purposes of subdivision (2) is underscored by the fact that its predecessor, section 1897 of the former Penal Law, contained a presumption of intent from mere possession. The elimination of this rebuttable presumption in the codification of the present statute is consistent with a limited scrutiny of the object itself, and an increased emphasis on the intent with which it is used.

. See, n 1, supra, for text of statute.

. The remainder of the instruction, including those elements dealing with the physical specifications of the imitation pistol, has been omitted.