■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE HARRISON, Appellant.—Judgment, Supreme Court, Bronx County (William H. Wallace, III, J., at suppression hearing; Joseph Fisch, J., at trial and sentence), rendered September 11, 1991, convicting defendant, after a jury trial, of manslaughter in the first degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 8⅓ to 25 years and 5 to 10 years, respectively, affirmed.

Evidence at the hearing and trial was that three plainclothes police officers and two civilians saw defendant chase the victim and, after the victim tripped and fell, saw him fire three or four shots into the victim at point blank range. Within minutes, defendant was apprehended, handcuffed, and placed in the back seat of an unmarked car. As one of the officers frisked defendant in the back seat, but before he was advised of his *Miranda* rights, defendant calmly asked the officer if he still had his gold chain on. Although the officer saw defendant's gold chain around his neck, he was so flabbergasted by the defendant's calm demeanor in asking that question, having just seen defendant shoot the victim to death, that, instead of answering defendant's question, he asked him, "You're worried about your gold chain?" The officer then observed defendant become agitated and heard him say, "Hey, fuck that motherfucker * * * he broke my window my car, my auto window * * * he got what he deserved". The defendant then went to sleep in the back seat of the car.

There is no basis to disturb the suppression court's finding, which is entitled to great weight *(People v Prochilo,* 41 NY2d

759), "that defendant's statement was a spontaneous utterance. There is no credible evidence that the police initiated disguised interrogation during which defendant's inculpatory statement was elicited, in violation of defendant's invocation of his right to remain silent [citation omitted]." *(People v Romano,* 176 AD2d 595, *lv denied* 79 NY2d 863.)

While we are agreed on the foregoing, there is an issue raised by the partial dissent with respect to the sentencing.

There is no merit to defendant's argument that, in imposing the maximum sentence for the manslaughter conviction, the court improperly considered defendant a cold-blooded executioner, despite the fact that he had been acquitted of murder. "[I]t is apparent that the sentencing court, uniquely familiar with the particularly heinous circumstances of this case, expressed as a community spokesperson and in profoundly human terms, the perceived extent of public condemnation and social outrage engendered by the criminal act for which defendant was convicted *(see, e.g., United States v Bakker,* 925 F2d 728). Additionally, there is no evidence of an abuse of discretion by the sentencing court in imposing sentence after due consideration of the circumstances of this case, defendant's probation report, his prior criminal history, and the comments of the prosecutor, defense counsel and defendant *(see, e.g., People v Junco,* 43 AD2d 266, *affd* 35 NY2d 419, *cert denied* 421 US 951)". *(People v Berrios,* 176 AD2d 547, 549, *lv denied* 79 NY2d 824; *see also, People v Bramble,* 182 AD2d 590, *lv denied* 80 NY2d 901.)

Unlike *People v Maula* (163 AD2d 180), cited in the dissent, where the sentence for conviction of the misdemeanor of criminal possession of a weapon in the fourth degree was enhanced when the trial court considered the death of the victim for which charge the defendant had been acquitted, here the defendant was convicted of the death of the victim, albeit on a different count. That the defendant may arguably have intended only to hurt the victim, does not alter the fact that he did snuff out his life.

Only recently, we disbarred an attorney, citing his failure to pay his New York State and Federal income taxes for some twenty years, even though his conviction for the misdemeanor of failing to file State returns, which led to the disciplinary proceeding, covered only a two year period *(Matter of Chervin,* 181 AD2d 111, 117).

After full consideration of defense counsel's presentence memorandum and hearing defense counsel and the defendant

argue for mitigation, the court was fully justified in imposing the maximum sentence for the criminal act for which the defendant was actually convicted. Concur—Wallach, Kupferman, Ross and Rubin, JJ.

Rosenberger, J. P., dissents in part in a memorandum as follows: I would vacate the sentence and remit the matter to another Justice of the Supreme Court for resentencing since, in imposing sentence, the trial court improperly considered as proven charges upon which the defendant was acquitted.

The defendant was indicted for the crimes of murder in the second degree, manslaughter in the first degree, three counts each of criminal possession of a weapon in the second and third degrees and two counts each of attempted murder in the first and second degrees.

At the trial, prosecution witnesses testified that after the deceased, Trent DeMunn, broke a window of the co-defendant Craig Crump's car, Crump handed a pistol to the defendant and told him to kill DeMunn. The defendant, according to these witnesses, then chased DeMunn, firing several shots at him. Two plainclothes officers joined in the chase. When DeMunn tripped and fell, it was claimed, the defendant walked over and fired three or four shots at him from close range.

The officers then allegedly ordered the defendant to stop but he responded by firing at them. After the officers returned the gunfire, the defendant surrendered.

The defendant testified that he went outside the bar where he had been and saw DeMunn, who had a gun. DeMunn, whom the defendant had seen earlier, said he was going to get one of the men in the Gucci suits and take his jewelry. The defendant was wearing such a suit and jewelry. He returned to the club, and after consuming seven or eight drinks, went back outside at 5:00 A.M. DeMunn and a friend confronted the defendant, asked "what are you going to do now?", and made a motion as if to pull out a gun.

The defendant testified that although he was intoxicated, he knew he had to "hurt him before he hurt me". Since he thought that DeMunn was going to pull out a gun, he began chasing him and fired two shots. He added that had he not been drinking, he would not have reacted that way. As the chase continued, he thought DeMunn was hiding behind a wall. He then jumped over the wall and saw DeMunn, who had fallen, and fired. He insisted that he only meant to hurt DeMunn and that he did not intend to kill him. He further

claimed that he had no more ammunition and never fired at the police officers.

The jury, apparently accepting the defendant's testimony concerning the events in question, convicted him only of the crimes which he admitted in his testimony: manslaughter in the first degree and criminal possession of a weapon in the second degree. He was acquitted of murdering DeMunn and of the charges relating to the police officers. The co-defendant Crump was acquitted of all charges.

At sentencing, defense counsel pointed out to the court that the presentence report prepared by the Department of Probation erroneously implied that the defendant had admitted committing all the crimes charged in the indictment. Further, the report failed adequately to indicate that the defendant had been acquitted of murder in the second degree and of the charges relating to his purported firing at the police officers. The court agreed to delete certain language contained in the probation report.

However, in sentencing the defendant, the court stated: "Mr. Harrison does stand before this court as a cold-blooded killer * * * By his own testimony, he admitted that he deliberately snuffed out the life of an innocent seventeen year old. He admitted that the killing of Trent DeMunn was no accident, that it was no act of passion, and that it was unprovoked * * * The victim had neither a weapon nor any instrument nor had done anything to provoke him. Finally, when the victim slipped and fell, Mr. Harrison, again by his own testimony, stood over his victim who was already on the floor, unarmed, helpless, who again represented no threat to Mr. Harrison, and again by Mr. Harrison's own testimony, Mr. DeMunn had his hands up, attempting to shield his face and his body from what was soon to follow. Mr. Harrison proceeded to execute him by pumping three bullets into him at close range. This was cold-blooded, this was unprovoked, and this was an execution."

The court then sentenced the defendant, a first time offender, to the maximum sentence permitted by statute.

The remarks of the court, to which defense counsel noted his exception, totally mischaracterized the defendant's testimony and were in direct contradiction to the jury's findings. The defendant testified that he was intoxicated, believed that DeMunn was armed and wanted to rob him, and that he had only meant to hurt, rather than kill, DeMunn. He never "admitted" that he "deliberately" killed DeMunn or that the

killing was "no accident". The sentencing court's remarks thus demonstrated that it misunderstood the evidence, since it attributed statements to the defendant which were precisely opposite to that to which he had testified. Despite the jury's verdict rejecting the testimony of the prosecution witnesses and accepting that of the defendant on every disputed point and, despite the verdict convicting the defendant of manslaughter rather than murder, the court imposed sentence on a "cold-blooded killer" who had "deliberately" executed De-Munn.

The defendant having been found not guilty of murder, the court should not have considered that charge in determining the sentence to impose for the crime of which the defendant was convicted (see, People v Maula, 163 AD2d 180; People v Cwikla, 60 AD2d 40, revd on other grounds 46 NY2d 434; People v Coward, 100 AD2d 628; People v Baez, 136 AD2d 451, lv denied 71 NY2d 892; cf., People v Hall, 46 NY2d 873, 875, cert denied 444 US 848).

The prohibition against double jeopardy found in both the US Constitution (5th Amend) and the NY Constitution (art I, § 6) also requires resentence here.

The unpublished decision and order of this Court entered herein on December 8, 1992, is hereby recalled and vacated.