In the Matter of IAN SCHRAGER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 27, 1982

### APPEARANCES OF COUNSEL

*Kim D. Ringler* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Howard Squadron* and *Harvey Horowitz* of counsel (*Squadron, Ellenoff, Plesent & Lehrer,* attorneys), for respondent.

### OPINION OF THE COURT

*Per Curiam.*

Respondent, a member of the Bar of this State, and two others formed a corporation for the purpose of operating a discotheque. To that end they leased an unused television studio and, in April, 1977 commenced operations under the name of Studio 54. In November, 1977 Studio 54 was granted a liquor license. From that point onward the venture was inordinately successful. Indeed, from November, 1977 to December, 1978 it generated revenues in

excess of $5,000,000. So intoxicating was this achievement to the principals that the corporation failed to declare some $2,500,000 in corporate revenues in the income tax returns, Federal and State, filed by it. Beginning in November, 1977, the undeclared corporate revenues were distributed to the three principals who failed to report their share of these distributions on the personal income tax returns, Federal and State, filed by them.

The "success" story ended with the execution of a search warrant by the Federal authorities in December, 1977. The search disclosed the existence of documents which confirmed the tax evasion scheme. Additionally, and as a result of respondent's fortuitous arrival on the scene while the search was in progress, the Federal Marshals found respondent in physical possession of less than an ounce of cocaine.

As the investigation progressed the principals of Studio 54 sought to convince the Federal authorities that all the skimming had occurred in 1978, a fact now acknowledged to be untrue. This would have relieved them of any personal claim of tax evasion since they had not yet filed their 1978 tax returns. Additionally, they sought to tamper with potential evidence by erasing from the cash journal a credit reflecting the salary paid to an employee. Since this employee was a government informer and had furnished the information upon which the Federal warrant was bottomed it was hoped that his elimination from the records as an employee would undermine his credibility on a motion to controvert the warrant.

In any event, respondent was indicted on a 12-count indictment. On January 18, 1980, he pleaded guilty to counts two and six of the indictment, both charging tax evasion under section 7201 of title 26 of the United States Code, both Federal felonies under section 1 of title 18 of the United States Code. On count two he was sentenced to a three- and one-half-year prison term and fined $10,000; under count six he was sentenced to a one-year prison term, execution of which was suspended, and he was placed on probation for a term of five years to run consecutive to count two. Additionally, he was fined $10,000. As part of the plea negotiations the misdemeanor narcotics charge

which resulted from respondent's possession of cocaine was dismissed. Subsequently, respondent supplied the Federal authorities with information against others which led to very substantial criminal prosecutions. By consequence, his three- and one-half-year prison sentence was reduced to 20 months.

This matter was thereafter referred to us. By order dated November 25, 1980 we suspended respondent and referred the matter to the Departmental Disciplinary Committee for hearing. Their report is now before us.

We are aware that although Federal law denominates tax evasion a felony, the crime is classified as a misdemeanor under the State law (Tax Law, § 376, subd 5; § 695, subd [a]). However, the situation here presented involves more than simple tax evasion. To begin with, there is the amount of the evasion. For a period of more than one year respondent was the recipient of some $7,000 to $8,000 weekly which was secreted and on which no tax was paid. Secondly, there can be no doubt as to the *mens rea* for, upon occasion, the distribution of the skimmed cash was made by him. Thirdly, he was part of a scheme to falsify evidence and sought actively to mislead the government. In furtherance of this scheme material evidence was concealed and an endeavor was made to falsify a record in order to adversely affect the credibility of a possible government witness. Indeed, respondent and his partners invented a fictitious debt to a construction company in order to furnish an explanation for the "setting aside" of the cash which had been skimmed. Moreover, respondent ultimately acknowledged that he represented to his attorney that all the skimming had occurred in 1978 and that the attorney in reliance on the assumed truthfulness of the statements made to him by respondent unwittingly conveyed these misrepresentations to the Federal authorities.

Based upon the foregoing we conclude that respondent has committed a serious crime within the meaning of section 90 (subd 4, par [d]) of the Judiciary Law. By his actions and conduct he has demonstrated the lack of character and fitness necessary to continue as a member of the Bar. The report of the Departmental Disciplinary Committee is confirmed. Respondent should be disbarred and his

name should be stricken from the roll of attorneys and counselors at law effective as of the date of his suspension.

BIRNS, J. P., ROSS, MARKEWICH, SILVERMAN and BLOOM, JJ., concur.

Respondent's name is stricken from the roll of attorneys and counselors at law in the State of New York.