In the Matter of LIONEL WERNICK, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 2, 1987

## APPEARANCES OF COUNSEL

*Claudio B. Bergamasco* of counsel *(Michael A. Gentile,* attorney), for petitioner.

*Lionel Wernick,* respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

Petitioner Departmental Disciplinary Committee moves for an order confirming the Hearing Panel's report recommending that respondent be suspended from the practice of law for a period of one year from October 9, 1986, or until the expiration of his period of probation, whichever is longer.

Respondent was admitted to practice as an attorney and counselor-at-law on March 27, 1967 in the Appellate Division of the Supreme Court, First Judicial Department. On a date not specified in the record, he was indicted in the United States District Court, Southern District of New York, on three counts of violating 26 USC § 7201. Specifically, the indictment charged that respondent attempted to evade income tax owing for the year 1979 by falsely stating on his tax return that his taxable income was $47,316 on which a tax was due of $15,374, when, in fact, his true taxable income was at least $62,771 on which a tax was due of approximately $23,412; the second count charged the same crime for the year 1980, with respondent reporting taxable income of $39,406 and a tax due of $11,526, when his true taxable income was at least $59,702 on which a tax was due of approximately $21,928; the third count charged the same crime for the year 1981, with respondent reporting taxable income of $52,863 and a tax due of $18,139, when his true taxable income was at least $78,717 on which a tax was due of approximately $32,607.

Put otherwise, respondent was charged with having understated his taxable income by at least $15,455 in 1979, $20,296 in 1980 and $25,854 in 1981, for a total of $61,605; and with having underpaid his tax by approximately $8,038 in 1979, $10,402 in 1980 and $14,468 in 1981, for a total of $32,908.

On August 22, 1983, respondent posted a cash bond with the IRS in the amount of $41,573. He did so on the understanding that the IRS had yet to finally determine his tax liability for the years 1979 through 1981 and that such posting would serve to stop the running of interest on that part of the amount finally assessed for these years later satisfied by

recourse to the bond. Respondent's tax liability for these years has yet to be determined by the IRS.

Posting of the cash bond apparently facilitated plea negotiations, and, on May 21, 1986, respondent pleaded guilty to a one count superseding information charging him with violating 26 USC § 7206 (1), a felony under Federal law. Specifically, the information charged respondent with having "wilfully and knowingly" made and subscribed a return, to wit, his 1979 Federal income tax return, "which contained and was verified by a written declaration that it was made under the penalties of perjury, which return the defendant then and there did not believe to be true and correct as to every material matter." On June 27, 1986, the Federal court rendered a judgment convicting respondent of "subscribing to a false tax return" in violation of 26 USC § 7206 (1) as charged, and sentencing him to two years' probation, a $5,000 fine, and 150 hours of community service. Since respondent's offense was committed prior to 1982, the maximum sentence he could have received was three years' imprisonment and a $5,000 fine. The statute now provides for a maximum penalty of three years' imprisonment and a $100,000 fine.

Respondent paid the $5,000 fine on July 15, 1986. A letter dated January 23, 1987 from the Director of the Department of Volunteer Services, New York University Medical Center, states that respondent had completed 150 hours of service with that organization in November 1986, but, having expressed a desire to continue volunteering his services indefinitely, had worked 227 hours altogether. The parties are in agreement that the two-year probationary period to which respondent was sentenced will expire on June 27, 1988 absent further order from the Federal court.

In August 1986, the DDC filed a "serious crime" petition based upon the judgment of conviction rendered on June 27, 1986. Respondent consented to his temporary suspension and requested a hearing pursuant to Judiciary Law § 90 (4) (h). On October 9, 1986, we granted the petition to the extent of temporarily suspending respondent from the practice of law and directing a hearing before the DDC for the purpose of inquiring into the appropriate measure of discipline to be finally imposed. The matter is now before us on the DDC's *motion* to confirm the Hearing Panel's recommendation that respondent be suspended for a period of one year commencing October 9, 1986, or until the expiration of his probationary period, whichever is longer. Urging us to be lenient, respon-

dent emphasizes that his misconduct did not arise out of the practice of law and disadvantaged no clients, and that the need to protect the public is, therefore, of little consequence. He pleads for a censure, or, at most, a six-month suspension. The DDC counters that all members of the public are hurt by tax crimes such as respondent committed, and that respondent does not appreciate the seriousness of his offense.

At the hearing, respondent, who acted as his own attorney, argued that his perjurious misconduct was attributable to an unconscious need to punish himself. He pointed out that the only type of income he failed to report in any of the three years in question were interest and dividends, and that because payers of this type of income must file 1099 forms with the IRS, it was inevitable that his failure to report would be detected. As respondent several times put it, he was "begging to be caught". In explanation of such self-destructive behavior, respondent asked the Hearing Panel to consider a medical report prepared by an eminent psychiatrist for purposes of the Federal court criminal proceeding, but the Hearing Panel rejected it as hearsay and instead adjourned the hearing to give respondent an opportunity to have the psychiatrist appear in person. However, when the hearing was resumed, respondent stated that he would rather not have the psychiatrist subjected to cross-examination, and urged the Hearing Panel to consider the written report. He argued that if the report was good enough to be considered by the Federal court in sentencing him, it is good enough to be considered by this court in disciplining him, and that his desire to avoid the expense and "emotional burden" of producing the doctor was not unreasonable given the purposes of the hearing. We reject this argument and agree with the Hearing Panel that it ought not to have considered the report. Apart from its hearsay character, it appears that it was being offered for the purpose of relitigating respondent's guilt by showing that the misrepresentations contained in his tax returns were not willfully and knowingly made (*Matter of Levy*, 37 NY2d 279).

Determined as respondent was to show that his failure to report income was due to a personality disorder, the DDC was equally determined to show that it was due to an intent to evade taxes, and that the Government, had it been of a mind to do so, could have prosecuted him for all three years under the superseded indictment. In an effort to prove the extent of respondent's underreporting of income, including the possibility that he failed to report other types of income besides

interest and dividends, the DDC requested his authorization to inspect the records maintained by the IRS relating to his taxes for the years 1979 through 1981, but respondent refused, expressing concern over the veracity of these "raw" files. This left the DDC with little to go on other than the superseded indictment, whatever evidentiary weight was properly to be accorded the cash bond filed by respondent with the IRS, the "calculated manner" in which respondent prepared his tax returns by, for example, reporting his nontaxable all savers interest, and whatever admissions respondent might make at the hearing concerning the extent of and reasons for his failure to report income. While respondent conceded that he underreported his income for all three years, he was steadfast in refusing to admit either the amount thereof or a guilty intent to evade taxes. Choosing his words carefully, he would neither "deny nor accept" the amounts of unreported income charged in the superseded indictment, and would say only that he was waiting for the IRS to make its final assessment. As a result, the DDC now accuses respondent of having been less than fully cooperative.

We are not insensitive to respondent's preference to have the amount of his tax liability computed by the IRS and not by this court, and, accordingly, we would rather not characterize his conduct as uncooperative. On the other hand, his reticence leaves us no choice but to conclude that he underreported his income in 1979, 1980 and 1981 in amounts approximating the amounts specified in the superseded indictment, and that he was no less guilty of perjury in 1980 and 1981 as his plea established he was in 1979.

After graduating from the University of Pennsylvania Law School in 1955, respondent was employed as house counsel to a radio station in Philadelphia. In 1959, he began practicing law as a single practitioner, with an emphasis on personal injury litigation. In 1965, he came to New York to join the legal staff of the Radio Corporation of America. From 1970 to 1981, he was on the legal staff of BBDO, a large advertising agency in New York, where he rose to the position of vice-president. Since 1981, he has been employed as a lecturer and adjunct instructor of marketing at New York University. He also regularly lectures on advertising and the law at the American Management Association.

Letters and other materials admitted into evidence at the hearing speak of respondent's good character and skill as a teacher. A letter from NYU Medical Center, for whom respon-

dent worked in satisfaction of that part of his sentence requiring community service, is exuberant in praising him for his contributions to that organization. Respondent also has done volunteer work for a charitable organization for the blind. There is satisfactory proof that deep-seated psychological problems have been resolved through a course of therapy. Since 1983, respondent's tax returns have been prepared by certified public accountants.

Upon consideration of the nature of respondent's misconduct, as well as mitigating circumstances including his prior unblemished disciplinary record, letters attesting to his good character, his career accomplishments, the nonlikelihood of future misconduct, his cooperation in the disciplinary proceeding, his work on behalf of charities, and the strain he was under due to the illness of his invalid mother, respondent should be suspended from the practice of law for a period of one year (compare, Matter of Cowan, 110 AD2d 53; Matter of Feldshuh, 84 AD2d 284), or for the period of his probation, whichever is longer (see, Matter of Langberg, 118 AD2d 323; Matter of Safran, 107 AD2d 238; Matter of Richter, 93 AD2d 505).

Accordingly, the motion is granted and the report confirmed.

SANDLER, J. P., ROSENBERGER, ELLERIN, WALLACH and SMITH, JJ., concur.

Respondent is suspended from practice as an attorney and counselor-at-law in the State of New York for a period of one year retroactive to October 9, 1986, or for the period of his probation, whichever is longer, and until the further order of this court.