In the Matter of JOSEPH CHERVIN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 16, 1992

**APPEARANCES OF COUNSEL**

*Deborah A. Scalise* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Angelo T. Cometa* of counsel *(Phillips, Nizer, Benjamin, Krim & Ballon,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Joseph Chervin was admitted to the practice of law in New York by the Second Judicial Department on October 18, 1961. At all times relevant herein, respondent has maintained an office for the practice of law within the First Judicial Department.

On April 16, 1990, respondent was convicted upon a plea of guilty in Albany City Court, Albany County, to two criminal informations charging him with failing to file a New York State tax return, in violation of section 1801 (a) of the Tax Law, which were misdemeanors. The informations charged respondent with the nonfiling of New York State income tax returns for the years 1986 and 1987. Respondent was sentenced to imprisonment for 60 days with his discharge conditioned upon making arrangements within 30 days with the New York State Tax Department to cover unpaid taxes. Respondent was also fined $10,000. Respondent has paid the fine and his actual period of incarceration was 37 days after allowance for good behavior.

After an order of this court (M-3803) entered February 15, 1991, deemed the crimes respondent had been convicted of to be "serious crimes" within the meaning of Judiciary Law § 90 (4) (d), the petitioner Committee was directed to hold a hearing and issue a report and recommendation to the court. No interim suspension was imposed.

A hearing was held before a Hearing Panel on June 4 and June 25, 1991. Respondent, five well-known attorneys and respondent's treating psychiatrist testified. At the hearing the following facts were revealed.

Respondent is 53 years old, married and the sole support of his wife and two children, ages 16 and 13. Respondent graduated in 1958 from Yeshiva College and in 1961 from New York Law School.

In approximately 1966, Mr. Chervin commenced practicing with a law firm and continued with that firm until approximately 1973. He testified that he became a partner around 1967 to 1969 and it was about this time that the nonfiling of tax returns commenced. Although convicted of failing to file State tax returns for the years 1986 and 1987, at the hearing, respondent admitted that for the 20-year period from 1968 to 1988 he filed no Federal or State income tax returns and, with

the exception of a period when he was counsel to a law firm and had tax withholdings, he paid no taxes.

Upon dissolution of his original firm, respondent became counsel to a new firm and became a partner in approximately 1978. While at this second firm he began to practice in the specialty area in which he has spent most of his career, bankruptcy law.

In July 1983, respondent joined another major firm as a "senior partner". By all accounts, he enjoyed a favorable reputation as a competent bankruptcy lawyer who functioned on major corporate bankruptcies.

In or about the summer of 1989, the respondent's firm received a notice from New York State tax authorities asking for tax related information about respondent. According to respondent, although the subject of the tax investigation had come up earlier, his firm did not become aware of the nonpayment of taxes until December of 1989 or January of 1990.

The supporting deposition filed with the criminal information indicates that the State's tax investigation involved respondent's failure to file returns and his unpaid income tax liability for a five-year period from 1984 through and including 1988.

Staff and respondent stipulated that the total amount of taxes owed by the respondent, exclusive of penalties and interest, only for the years 1984 through 1988 is $100,232.03 to the State of New York and $558,750.13 to the United States.

At or about the time respondent learned of the State tax investigation he consulted with a lawyer who suggested that respondent consult with a psychiatrist. In approximately December 1989, respondent began treatment with a psychiatrist who respondent saw on a twice-weekly basis.

In March 1990, as the criminal investigation drew to a close, respondent appeared at the doctor's office for his routine appointment. According to the psychiatrist, respondent was in a "very dreadful condition" and in his judgment very close to suicide and arrangements were made for him to be hospitalized.

Respondent's wife knew nothing about his nonpayment of taxes or the criminal investigation until after respondent's hospitalization. Respondent spent three weeks at Regent Hospital and during that period he was asked by his firm to withdraw from the partnership, which he did effective March

31, 1991. At that time respondent was the head of the bankruptcy department and he left his entire client base with that firm.

On April 16, 1991, while still a patient at Regent Hospital, Mr. Chervin traveled to Albany to enter his guilty plea. He surrendered for incarceration on May 2 and was released on June 17, 1991.

In September 1991, respondent joined still a fourth major firm. A senior partner of that firm testified before the Hearing Panel that a professional search firm had written to his firm about respondent. The witness and his firm were aware of respondent's misdemeanor conviction and tax liabilities before they offered him employment. Respondent has attracted a new and lucrative clientele to this firm including a bankruptcy matter involving a "billion dollar company which is the third largest of its kind in the industry". The witness described his firm's experience with respondent as follows: "He has impressed us with his legal ability and his strength of character and he just handles himself extremely well as a person and as a lawyer. He's obviously extremely bright, but beyond that he's a very measured, very responsible person."

At the hearing, respondent acknowledged the wrongful nature of his acts. He testified in pertinent part as follows: "I view it as having deprived my government, both on the State and Federal level, of their fair share of my compensation, just as everyone else has to pay their fair share of compensation. Without necessarily characterizing it as larceny or theft, it's in my view the moral equivalent of that in a sense. I have taken and kept for myself something which under the law was to be given to the government, and that is a crime".

When asked to explain why he failed to file or pay income taxes for 20 years, respondent could offer no explanation.

During the 20-year period of nonfiling, respondent testified that he was not addicted to drugs or alcohol; he was not under psychiatric treatment; and he was not having financial difficulties. In fact, respondent admitted that in July 1983 his compensation was $280,000, and continued to grow over the next few years. In 1987, respondent testified that his compensation was around $460,000.

With respect to his outstanding tax liabilities, respondent stated that no arrangement for payment has been finalized with either the Federal or State taxing authorities. Respondent claimed that his tax liabilities including interest and

penalties which approximately double the underlying tax liability, exceed his net worth. When asked what he did with the money that he should have paid to the State and Federal governments over the 20-year period, respondent stated that "it was absorbed and used in connection with our general living expenses".

Respondent's treating physician, a board certified psychiatrist, testified that he continues to see respondent twice a week and that he has prescribed no medication. The doctor stated that he is treating respondent without charge because his resources were "very badly depleted" because of his unpaid tax liabilities.

He testified that when he initially saw respondent, the latter was suffering from an adjustment disorder, and severe depression due to the stress of the criminal investigation. He speculates that respondent may also be suffering from a schizoid personality disorder and/or narcissistic personality disorder. However, other than vague generalities about these disorders, the doctor admitted he had not definitively classified respondent's condition. He could offer no explanation for respondent's initial embarkation upon his tax evasion.

The Hearing Panel also heard the testimony of five character witnesses. The gist of the testimony of all of the character witnesses was that respondent had enjoyed a fine reputation and that his conduct with regard to his tax liabilities appeared to be an aberration.

Respondent also submitted a compendium of 19 letters from professional colleagues, community leaders, clients and friends, all of whom attested to respondent's good character and reputation and contribution to his community.

At the conclusion of the testimony, staff counsel recommended that respondent should be censured based on asserted precedent in this court for imposing a censure in cases involving misdemeanor tax convictions.

On November 7, 1991, the Hearing Panel issued its written report recommending that respondent should be censured. In a 27-page dissent, one Panel member, recommended that at the very least respondent should be suspended from the practice of law for a period of three years.

By motion (M-5888) dated December 16, 1991, the Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of public censure.

By "cross motion" (M-1110) dated February 28, 1992, respondent also seeks an order confirming the Hearing Panel's report and imposing the recommended sanction of public censure.

Respondent stands convicted of two counts of failing to file New York State income tax returns in violation of section 1801 (a) of the Tax Law of the State of New York, which is a misdemeanor offense. Although respondent's plea covered his failure to file State tax returns for the calendar years 1986 and 1987, respondent admitted that he had not paid or filed State or Federal income tax returns for approximately a 20-year period.

Respondent acknowledged that he was aware of his obligation to do so but just did not do it. At the time of respondent's misconduct he was earning a substantial income, and his nonpayment and nonfiling coincided with when he became a partner and was no longer subject to income withholding.

Neither respondent nor his psychiatrist could offer any explanation for this misconduct. However, all of the facts suggest that respondent's conduct was deliberate and willful.

At the time of the hearing final arrangements had not been made with the State and Federal tax authorities concerning respondent's payment of taxes, interest and penalties owed. It was stipulated at the hearing that only for the years 1984 through 1988 respondent's tax liability exclusive of interest and penalties is $100,232.03 to the State and $558,750.13 to the Federal Government. Although no claim has been made by respondent that he is financially unable to make payments to reduce this liability, as of the hearing he had only repaid $40,000 to the State as part of his sentence. Moreover, throughout his ordeal, respondent was not practicing law only for a period of six months. Since September 1991, he has been employed presumably earning substantial income in view of what has been described by a partner as his major position in the firm.

The factors which the majority of the Hearing Panel considered in mitigation are not truly mitigating factors. Aside from the fact that respondent expressed a deep appreciation of the wrongful nature of his acts, the Panel considered that he has been publicly humiliated as a result of the criminal prosecution; he has lost the respect of his professional peers; he has lost a position with a prominent law firm; he has been incarcerated; and a suspension will jeopardize his position

with his present law firm which in turn would impede his ability to repay the money he owes the government.

The majority of these factors are nothing more than the natural consequences of having been found guilty of a criminal act. Moreover, respondent himself testified that he could earn substantial income not practicing law, as a consultant.

In *Matter of Walsh* (55 AD2d 315) although we noted that "there was no venality or improper motive on the part of respondent in his failure to file income tax returns", we further noted that "there also can be no dispute that his failure to file constitutes professional misconduct" *(supra,* at 316) in imposing a period of suspension.

The reliance by the respondent and the majority of the Hearing Panel on *Matter of Hollman* (164 AD2d 328) is misplaced. In that case, we specifically noted that: "The record establishes that in failing to file tax returns the respondent was motivated neither by dishonesty or venality" *(supra,* at 332).

Respondent herein has exhibited a pattern of misconduct in not paying Federal or State taxes for a period of 20 years. Further, respondent failed to establish, by way of mitigation, that his state of mind when he failed to make the required filings was neither venal nor purposeful. On the contrary, the record is clear, that, as characterized by the dissenting Panel member, respondent's motivation for the sustained 20-year nonfiling and nonpayment of taxes could be summarized by the words "greed" and "profit".

Since we find that the nonfilings for which respondent was convicted *were* motivated by deliberate venality and dishonesty, in violation of Code of Professional Responsibility DR 1-102 (A) (3), (4) and (7), as evidenced by the 20-year pattern of misconduct, with no explanation offered in mitigation, the circumstances warrant the imposition of the most severe sanction we possess.

Accordingly, the Committee's motion and respondent's "cross motion" to confirm the Hearing Panel's report are denied, and respondent is disbarred and his name is ordered stricken from the roll of attorneys and counselors-at-law.

118

MILONAS, J. P., ELLERIN, ROSS, ASCH and RUBIN, JJ., concur.

Motion and cross motion denied, and respondent is disbarred and his name ordered stricken from the roll of attorneys and counselors-at-law in the State of New York, effective August 17, 1992.