In the Matter of MICHAEL P. OSHATZ, a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, July 30, 1992

**APPEARANCES OF COUNSEL**

*Jeremy S. Garber* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Jacquin D. Bierman* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Michael P. Oshatz, was admitted to the practice of law in New York by the Second Judicial Department on April 15, 1962. At all times relevant herein respondent maintained an office for the practice of law within the First Judicial Department.

On February 6, 1989, respondent was convicted by a jury, in the United States District Court for the Southern District of New York of one count of conspiracy to defraud the United States in violation of 18 USC § 371; 12 counts of wilfully aiding and assisting in the preparation of false documents in violation of 26 USC § 7206 (2); and two counts of wilfully making a declaration under penalties of perjury that respondent knew to be false, in violation of 26 USC § 7206 (1). On July 14, 1989, respondent was sentenced to a term of incarceration of 40 months which was later reduced to 32 months to be followed by a period of probation of three years. Each of the crimes upon which respondent was convicted constitute Federal felonies but are misdemeanors under New York law.

The United States Court of Appeals for the Second Circuit affirmed the judgment of conviction on August 23, 1990 and certiorari was denied by the Supreme Court of the United States in April 1991.

After an order of this court (M-2169) entered November 9, 1989, deemed the crimes respondent has been convicted of to be "serious crimes" within the meaning of Judiciary Law § 90 (4) (d), the petitioner Committee was directed to hold a hearing and issue a report and recommendation to the court. In the interim, respondent was suspended from the practice of law.

Hearings were held before a Hearing Panel on December 12, 1990 and June 19, 1991. Respondent and eight character witnesses testified. The following facts were revealed:

Respondent is 54 years of age and has three children, ages 26, 24 and 21. Respondent graduated from Lehigh University in 1958 and Georgetown Law Center in 1961. In 1966, he received an LLM in taxation from Georgetown.

Following his admission to the Bar respondent worked for a law firm as a trial assistant. Thereafter, for almost four years, he was employed in the Chief Counsel's Office of the Internal Revenue Service. This was followed by two clerkships at the United States Tax Court. In approximately 1967, respondent

joined a firm in New York City which was followed by associations in other firms and finally with the law firm of Goldschmidt, Fredericks and Levinshohn which eventually became Goldschmidt, Kurtzman and Oshatz.

Between 1979 and 1983, respondent assisted in the formation of limited partnership tax shelters, the offering memorandum for which reported that any losses generated by partnership investments would be available to investors as tax deductions. As a result of these transactions investors were able to defer the payment of taxes through the deduction from current income of significant losses and interest expense which the transaction produces, generally in its early years. While there was no illegality in the formation of these limited partnerships, a problem developed in that they did not generate sufficient tax losses to issue deductions of the magnitude expected by the limited partner investors. In order to generate such tax deductions, the partnerships falsified documents so as to reflect tax losses which in fact never occurred. Respondent cooperated in his client's fraudulent scheme. Based upon these fraudulent transactions in the amount of $1.6 billion, illegal tax losses of $225 million were passed on to taxpayers who were members of the limited partnerships.

Respondent prepared Federal income tax returns for the limited partnerships which were false as to material matters and subscribed his own individual Federal income tax returns for 1981 and 1982 which contained written declarations, that they were made under penalties of perjury, knowing that certain material matters were not true and correct.

Respondent alleges that be became involved in the limited partnerships with a client, who is alleged to have been the mastermind of the tax fraud scheme. Respondent concedes that when he became aware of facts that alerted him to the fraudulent scheme, he did nothing to prevent further wrongdoing. Respondent admitted that when he was alerted to the improper conduct of his client, he did not resign as counsel or take any other action. Instead he "looked the other way" and continued to reap the benefits of the wrongdoing for himself and his law firm. While respondent claimed that he was motivated in part by concern for innocent investors, he acknowledged that the fraud which he concealed caused those investors harm in the form of penalties and interest which were paid when the improper tax deductions were later disallowed.

Respondent further admitted that he personally gained from his actions. In 1980, he generated $350,000 in fees and $150,000 in disbursements from his work on the limited partnerships. Based on his own investment, respondent derived a $300,000 loss which he took on his 1980 tax return and a $600,000 loss which he took on his 1981 return.

On July 1, 1987, after learning of the criminal investigation, respondent resigned from his law firm and ceased the practice of law. He stated that he has spent his time defending himself in 15 lawsuits which were filed against him. He stated that he is financially devastated and only his personal pride has stopped him from filing for bankruptcy. As the result of the stress resulting from the investigation and conviction he has aggravated an asthmatic condition and he has developed angina. In the last two to three years, he has spent over 100 days in the hospital.

Eight character witnesses testified on behalf of respondent. Each attested to his fine reputation for honesty and integrity in the community.

At the conclusion of the testimony respondent's counsel asked that respondent be suspended from the practice of law for the entire period of his incarceration and probation.

On February 20, 1992, the Hearing Panel issued its written report recommending that respondent should be disbarred. The Panel found as follows:

"Respondent was the lawyer who was involved in the formation and implementation of the investment vehicles which were used to create and carry out the fraudulent deductions and, by his own admission, did nothing to prevent further wrongdoing when he became aware of facts which alerted him that things were seriously amiss * * *

"It should not go unnoticed in examining respondent's conduct, that he was a sophisticated and knowledgeable tax lawyer, who had spent his legal career crafting transactions beneficial to his clients which took advantage of the tax laws. This is not, therefore, a situation in which a lawyer acted improperly in an area of law in which he was unskilled. Respondent knew the law and what it required for compliance. In short, the conduct resulting in his conviction was deliberate in that respondent after learning of the wrongdoing made a conscious decision, after weighing the right and wrong, not to bring it to an end.

"The mitigation proof which was presented through various

friends, former clients and respondent himself, established that respondent was an able lawyer, a good husband and father and a good neighbor. In addition, it showed that respondent has paid a dear price for his wrongdoing, with more still owing in the form of jail time, and that he has shattered the lives of himself and his family, as well as adversely affecting his own health in a significant way. The human tragedy in this proceeding was palpable. On the other hand, the transgression was so significant and the justification for his conduct so absent, that no sanction short of disbarment would be appropriate."

By motion dated March 20, 1992, the Departmental Disciplinary Committee is now seeking an order confirming the Hearing Panel's report and imposing the recommended sanction of disbarment.

Respondent opposes the Committee's motion and requests that respondent be suspended for the period of his incarceration and probation. Counsel stresses that respondent has had an unblemished record in his 30 years of governmental and private practice, he has provided *pro bono* service to the community, to the Bar and to legal education.

Counsel also stresses that respondent was not the mastermind of the fraudulent scheme; that he was overworked and harassed and that he had to consider the preservation of the secrets of his client under the New York Code of Professional Responsibility.

Respondent stands convicted of conspiracy to defraud the United States and the Internal Revenue Service by assisting in forming and representing a member of limited partnership tax shelters that engaged in prearranged fraudulent trades in order to create false tax deductions based on fraudulent losses and interest expenses, in violation of 18 USC § 371. It was estimated that over $225 million in false net tax losses were passed on to investors in or customers of these tax shelters. Respondent was also convicted of 12 counts of aiding and assisting in the filing of false tax returns for the tax shelter partnerships and their loss-purchasing customers, in violation of 26 USC § 7206 (2). Finally, respondent was convicted of two counts of knowingly and wilfully making and subscribing to false personal income tax returns for the years 1980 and 1981 in violation of 26 USC § 7206 (1). The false and fraudulent losses claimed as deductions on respondent's personal returns exceed $1.4 million.

The sanctions generally imposed by this court for tax offenses similar to those for which respondent was convicted, range from a six-month suspension *(see, e.g., Matter of Richter,* 93 AD2d 505; *Matter of Sorkin,* 80 AD2d 31) to a one-year suspension *(see, e.g., Matter of Diamond,* 150 AD2d 115; *Matter of Wernick,* 128 AD2d 260; *Matter of Cowan,* 110 AD2d 53), depending upon the circumstances and mitigating factors. In some exceptional cases, this court has deemed the sanction of disbarment to be appropriate *(see, e.g., Matter of Chervin,* 181 AD2d 111).

Respondent, an experienced and respected tax attorney, although not the mastermind of the tax fraud scheme admitted that when he became aware of the scheme, he ignored it and did nothing. The testimony established that respondent's conduct was intentional; economic necessity was not a motivation for the crime; there was considerable personal gain from the misconduct and there were efforts to falsify potential evidence or mislead the Government. This is not a simple tax evasion case *(see, Matter of Schrager,* 86 AD2d 229).

Based upon the foregoing we conclude that respondent has committed a serious crime within the meaning of section 90 (4) (d) of the Judiciary Law. By his actions he has demonstrated the lack of character and fitness necessary to continue as a member of the Bar.

Accordingly, the Hearing Panel's report is confirmed and the petition to disbar respondent is granted.

CARRO, J. P., ELLERIN, WALLACH, ASCH and RUBIN, JJ., concur.

Application granted, the Hearing Panel's report confirmed, and respondent is disbarred from practice as an attorney and counselor-at-law in the State of New York, effective July 30, 1992.