[931 NYS2d 571]

In the Matter of ROGER M. ROISMAN, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, October 18, 2011

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Scott D. Smith* of counsel), for petitioner.

*Michael S. Ross*, for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Roger M. Roisman was admitted to the practice of law in the State of New York by the Second Judicial Department on June 24, 1981. At all times relevant to the misconduct which underlies this proceeding, he maintained an office for the practice of law within the First Judicial Department.

In 1987, respondent, an experienced tax lawyer with an LLM in tax law who, since graduating law school in 1975, practiced law at several law firms and was also employed in the tax department of an accounting firm, became an equity partner at the law firm of Stroock & Stroock & Lavan LLP (Stroock) where he remained until 1999. Thereafter, respondent, who in 1998 earned $653,539, started a company called Retail Development Partners (RDP). In 2001, however, approximately after $2^1/2$ years with RDP, during which time respondent's yearly income precipitously dropped, never exceeding $122,682, respondent deemed RDP a failure and returned to law firm practice, working at several law firms and ultimately joining the firm of Tannenbaum Helpern Syracuse & Hirschtritt LLP (Tannenbaum Helpern). Respondent joined Tannenbaum Helpern as a partner in 2004 and is currently so employed. Since 2001, after respondent wound down RDP and resumed private law practice, respondent's income has steadily increased, generally exceeding $200,000 per year. In 2007, respondent earned $497,667.

In 1998, respondent was diagnosed with an atrial septal defect, a congenital heart defect, which required respondent to undergo surgery. Complications from the surgery, however, left respondent with an atrial flutter, atrial fibrillation, and two heart arrhythmias, requiring further surgery in 1999. Respondent's surgery in 1999 successfully repaired his atrial flutter, however, his arrhythmias were irreparable and they continue to plague him. Besides the foregoing, in 1999, respondent was diagnosed with Type 2 Diabetes, a cancerous thyroid requiring surgery, and hepatitis C. In 2001, as a result of RDP's failure and his multitude of health issues, respondent became "quite upset" and depressed and therefore began and continues treatment with a psychiatrist.

In 2008, respondent was contacted by the New York State Department of Taxation and Finance concerning his failure to file tax returns for years 2001-2007 and his failure to pay New

York State taxes for those same years. Conceding that he knowingly failed to file tax returns and pay state and federal taxes for seven years, respondent retained counsel, hired an accountant, filed the outstanding tax returns, and in 2008, paid $732,930 in state and federal taxes. While respondent attributed depression, embarrassment and avoidance to his failure to file tax returns and pay taxes, he admitted that the failure to pay was neither due to the size of his tax liability nor to the financial inability to pay. Instead, respondent, who was gainfully and successfully employed between 2001 and 2007, and who managed to keep all his other personal and financial affairs in order during that time period stated that he had "no excuse[s]," and that he "should have filed the returns and paid the tax[es]." Between 2001 and 2007, when respondent's wife would inquire about whether he had filed tax returns and paid their taxes, respondent would assure her that he had.

On November 19, 2008, respondent entered into a plea agreement whereby he would plead guilty to one count of violating New York Tax Law § 1801 (a) insofar as he failed to file a New York State tax return for the year 2006. It was understood that the plea was in satisfaction of respondent's failure to file tax returns for the years 2001-2007. On November 25, 2008 respondent pleaded as agreed and was convicted of a class A misdemeanor. He was sentenced to a conditional discharge and fined $10,000.

On February 18, 2010, the Departmental Disciplinary Committee (Committee) filed a petition seeking an order declaring that the crime of which respondent was convicted, the intentional failure to file a tax return, constituted a "serious crime" pursuant to Judiciary Law § 90 (4) (d) and 22 NYCRR 603.12 (b). By unpublished order dated April 12, 2010, we granted the Committee's petition and pursuant to 22 NYCRR 603.4 (d), referred this matter to a Hearing Panel (Panel) to conduct a hearing on sanctions. The Panel conducted a hearing, respondent was present, represented by counsel, and was afforded an opportunity to be heard. The Panel also heard from several witnesses who testified about respondent's good character. Thereafter, the Panel issued its report. Finding only one aggravating factor, namely respondent's failure to voluntarily discontinue and self-report his illegal behavior, and finding several mitigating factors, namely that respondent acknowledged his guilt, cooperated with the authorities, made restitution, has good moral character, and engages in community service and pro

bono work, the Panel recommended suspension from the practice of law for one year.

The Committee now petitions this Court for an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2), and Judiciary Law § 90 (2), confirming the determination of the Panel and suspending respondent from the practice of law for one year. Respondent cross-moves for an order disaffirming the Panel's determination, averring that the Panel erred in failing to recognize certain mitigating factors and further erred in concluding that suspension, rather than public censure, was the appropriate sanction.

"As in all 'serious crime' cases, the only issue for the Court to decide is the appropriate sanction to impose upon the respondent based upon the offense committed and any mitigating or aggravating circumstances" (*Matter of Novak*, 200 AD2d 66, 68 [1994]). Here, notwithstanding the existence of mitigating factors, we agree with the Panel's recommended sanction of one year's suspension from the practice of law, since it is in accord with this Department's recent precedent for substantially analogous conduct (*see Matter of Rosenberg*, 82 AD3d 85 [2011]; *Matter of Goldman*, 71 AD3d 9 [2009]; *Matter of Howley*, 70 AD3d 218 [2009]). Accordingly, we hereby grant the Committee's petition in its entirety.

An attorney's failure to comply with the law's basic obligation to file tax returns is a serious offense warranting public discipline (*Matter of Partland*, 257 AD2d 209, 211 [1999]). This is because "[o]ne of the basic obligations of a citizen in a free society is to declare and pay taxes [and a] lawyer—least of all, a benefactor and role model for the community—cannot purposely avoid that civic responsibility without appropriate sanction" (*Matter of Barnes*, 241 AD2d 13, 15 [1998]). The sanctions for an attorney's failure to pay taxes vary, from private reprimand to suspension (*Matter of Eppner*, 62 AD3d 151, 155 [2009]). While public censure is warranted when the failure to pay taxes is aberrational (*Matter of Burns*, 242 AD2d 49, 50 [1998]), suspension may be warranted when the failure to pay taxes is protracted, spanning several years (*id.* at 51), in the absence of substantial mitigating factors or when there exist substantial aggravating factors (*Eppner* at 155).

Here, contrary to respondent's contention, the Panel properly recommended suspension, since while the evidence at the hearing established the existence of several mitigating factors, the same evidence also established the existence of several aggravat-

ing factors, some which the Panel failed to note. More importantly, and detrimental to respondent's proffered defense, his excuse for failing to file tax returns and pay taxes for seven years, far from constituting a mitigating factor, was completely unsupported and belied by the evidence at the hearing.

At the hearing respondent established a host of mitigating factors, all of which the Panel noted, however, contrary to respondent's contention, the Panel properly rejected that the damage to respondent's career, as a result of his criminal conviction, constitutes a mitigating factor (*Matter of Chervin*, 181 AD2d 111, 116-117 [1992] [adverse consequences to an attorney's career resulting from criminal conviction are not mitigating factors since they are "the natural consequences of having been found guilty of a criminal act"]). Moreover, the Committee properly rejected that respondent's drop in income in 1999-2000, coupled with his ailing health during this same time period, mitigated his failure to pay taxes for the seven years thereafter.

It is certainly true that an extreme financial reversal coupled with mental stress during the time period within which a lawyer fails to file tax returns and pay taxes has been found to constitute a mitigating factor (*Matter of Hornstein*, 232 AD2d 134, 136 [1997]). Similarly, a substantial drop in income together with a significant increase in expenses has also been deemed a mitigating factor (*Eppner* at 153-156). In this case, however, the testimony at the hearing failed to establish that respondent's ailing health, beginning in 1998, coupled with his sudden decrease in income, beginning in 1999, prevented him from filing tax returns and paying taxes. First, respondent himself testified that his failure to file tax returns and pay his taxes were not attributable to his decreased income or due to his tax liability. Second, and more importantly, while respondent attributes depression brought about by his failed business, decreased income, and ailing health as the cause of his failure to file tax returns and pay his taxes, such claim is belied by respondent's ability to successfully manage all other aspects of his life during this same time period. Specifically, in 1998, notwithstanding respondent's heart condition, he worked at Stroock where he made well over $600,000 and paid his taxes. Similarly, in 1999, despite his deteriorating health, respondent managed to start RDP, embark on a new career, file tax returns and pay his taxes. Lastly, in the seven years that respondent failed to file tax returns and pay taxes, he successfully managed his personal af-

fairs, met all of his other financial obligations, and ostensibly—if wages are any measure—resuscitated his legal career. In sum, timing does not necessarily imply causation and here, beyond the fact that respondent's financial and health issues preceded his failure to file tax returns and pay taxes, we decline to find that those issues were the cause of his failure such that they constitute a mitigating factor.

In addition to the one aggravating factor found by the Panel, namely, respondent's failure to voluntarily discontinue and self-report his illegal behavior, we also find that insofar as respondent's gross income in 2005-2007 was $328,754, $301,213, $497,667, respectively, his income during those years, when he failed to file tax returns or pay taxes, was substantial such that his failure to pay when he ostensibly could, constitutes an aggravating factor (*Matter of Everett*, 243 AD2d 75, 76 [1998]).

Based on the foregoing, suspension rather than public censure is the appropriate sanction. Guided by precedent, on balance, this case is substantially analogous to *Matter of Rosenberg* (82 AD3d 85 [2011]). In that case, we suspended an attorney for one year for his failure to file tax returns and pay his taxes for four years. While choosing not to penalize the respondent in that case for failing to pay taxes when all along he had the money to do so, we nevertheless held that the absence of any excuse for his failure to file tax returns and pay taxes, coupled with his failure to self-report his behavior were aggravating factors warranting suspension (*id.* at 87). That there existed a host of mitigating factors, namely that the respondent had a good reputation, he cooperated with the authorities, he expressed remorse, and he took corrective action to prevent future nonpayment, served only to shorten the proposed period of suspension, from 18 months to one year (*id.*). Here, respondent having failed to substantiate his salient excuse for his failure to file tax returns and pay taxes for seven years, i.e., financial and health issues, we are left with an unexcused failure to file tax returns and pay taxes for a protracted period of time during which respondent was financially able to do so. Any mitigating factors here, like in *Matter of Rosenberg*, simply serve to limit the length of the suspension. Two cases, *Matter of Howley* (70 AD3d 218 [2009]) and *Matter of Goldman* (71 AD3d 9 [2009]), cited and relied on by the Panel, are instructive and further support the Panel's recommended sanction. In *Matter of Howley*, we ordered a one-year suspension for the respondent's failure to file tax returns and pay taxes, finding the aggravating factors more

compelling than the mitigating factors. Specifically, we found the respondents' medical excuse for his failure to file tax returns and pay taxes incredible and further found his assurance to his wife that he had paid and filed their taxes and his failure to file returns and pay taxes, at a time when he was financially able, constituted aggravating factors warranting suspension (*Howley* at 221; *see also Goldman* at 12).

Accordingly, the Committee's petition should be granted, the Panel's report confirmed, respondent is suspended from the practice of law for one year, and the cross motion is denied.

GONZALEZ, P.J., MOSKOWITZ, FREEDMAN, RICHTER and ROMÁN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of one year, effective the date hereof and until further order of this Court.