[42 NYS3d 109]

In the Matter of DAVID SCHNALL, an Attorney, Respondent.
DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, November 29, 2016

APPEARANCES OF COUNSEL

*Jorge Dopico*, *Chief Counsel*, *Departmental Disciplinary Committee*, New York City (*Jeremy S. Garber* of counsel), for petitioner.

*Michael A. Gentile*, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent David Schnall was admitted to the practice of law in the State of New York by the First Judicial Department on February 1, 1993. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Department.

On May 1, 2012, respondent pleaded guilty in Criminal Court, Queens County, to failing to pay taxes in violation of New York Tax Law § 1810, a misdemeanor. Respondent's conviction was predicated on his failure to pay New York State income taxes for the tax years 2007 through 2010. At the time of his guilty plea, he paid $80,837 in full satisfaction of his New York State tax liability for the aforementioned tax years and was sentenced to a conditional discharge. In fact, respondent's tax delinquency was much greater than the four-year period upon which his conviction was based; respondent did not file federal or New York State tax returns, nor did he pay taxes, for the tax years 2002 through 2010.

By a notice and statement of charges, the Departmental Disciplinary Committee charged respondent with a total of eight charges alleging that he intentionally failed to meet his tax obligations and sent correspondence to state and federal tax authorities in which he threatened them with frivolous litigation in violation of Code of Professional Responsibility DR 1-102 (a) (3) (22 NYCRR 1200.3 [a] [3]) and rule 8.4 (b) of the Rules of Professional Conduct (RPC) (22 NYCRR 1200.0); DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) and RPC rule 8.4 (c); DR 7-102 (a) (1) (22 NYCRR 1200.33 [a] [1]); DR 7-102 (a) (2) (22 NYCRR 1200.33 [a] [2]); and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and RPC rule 8.4 (h). In his answer, respondent

admitted all the material facts alleged by the Committee but denied the charges.

The Committee now moves, pursuant to Judiciary Law § 90 (2) and Rules of the Appellate Division, First Department (22 NYCRR) §§ 603.4 (d) and 605.15 (e) (1), to confirm the Hearing Panel's findings of fact and conclusions of law insofar as it sustained the tax related charges (charges one through five) and its recommendation that respondent be required to enter into written agreements for the payment of any back taxes that he owes; and requests that this Court take such action as it deems appropriate with respect to the three charges not sustained by the Referee and Hearing Panel (charges six through eight) and that respondent be suspended for no less than nine months.

By cross motion, respondent opposes the Committee's petition and requests that this Court confirm the Hearing Panel's liability findings in full, along with its recommendation that he be required to enter into written agreements for the payment of any back taxes that he owes, disaffirm the Referee's and Hearing Panel's recommendations that he be suspended for six months and nine months, respectively; and that this Court impose a censure or, at most, a three-month suspension.

The material facts are undisputed. Respondent, who is 49 years old and focuses his practice on Family Court matters, testified that, inter alia, he has always had a fascination with issues related to money and taxation. In or about 2002, after extensive research into nonconventional theories regarding taxation and the monetary system, he decided not to file tax returns or pay taxes based on, among other things, what he now realizes was the misguided belief that monies he earned in connection with the practice of law were not subject to taxation.

Between 2002 and 2011, respondent wrote more than 100 letters to New York State and federal tax officials, and also telephoned them, to advise them that their files pertaining to him purportedly contained incorrect Individual Master File (IMF) codes which affected his tax liability; and that, in his view, he was not obligated to file returns or pay taxes until the issue was addressed.

Respondent admitted that he had spoken with tax attorneys over the years, none of whom agreed with his position. While respondent filed an administrative claim against the IRS for

alleged unlawful collection activities, which he understood to be the precursor to a federal lawsuit, he never actually pursued a lawsuit because New York City did not honor an IRS levy on payments to him.

In 2011, shortly after the birth of his son, respondent was approached by New York State tax agents and told that if he did not resolve his outstanding tax liability civilly, it would become a criminal matter. Respondent stated that the birth of his son caused him to reassess his views regarding his tax obligations, and he advised the tax agents, through counsel, that he would file his returns and pay his taxes but he first wanted an agreement that he would not be criminally prosecuted. Such an agreement was not forthcoming, and, as noted, respondent was prosecuted and ultimately pleaded guilty to a misdemeanor.

Between February and April 2012, prior to his conviction, respondent filed his New York State tax returns for the tax years 2005 through 2010; and, in November 2013, he entered into an installment payment plan with New York State tax authorities pursuant to which he pays $200 per month toward his outstanding tax liability for the tax years 2004 through 2006, and 2011, which exceeds $60,000. Between 2012 and 2013 he filed his federal tax returns for the tax years 2002 through 2012. His federal tax liability is now in excess of $300,000, including interest and estimated penalties. Respondent is awaiting a payment agreement with the IRS and, in the interim, he has been paying the IRS $500 per month.

Respondent admitted that during the 10-year period at issue he saved approximately $200,000 as a result of not paying taxes. He averred that this money was to provide for the future, not to finance a lavish lifestyle, as evinced by, among other things, the fact that he has lived in the same studio apartment for 18 years, has never owned a car, and has not really traveled.

Respondent stated that he has paid approximately $100,000, half of his savings, to satisfy his tax liability to New York State; and his remaining savings were used for legal expenses in connection with the criminal and disciplinary proceedings, a Family Court proceeding involving his now three-year-old son, and to financially support his son. As a result of his tax conviction, respondent was removed from the Family Court, Queens County 18-B assigned counsel plan from which he had derived a significant part of his income and which provided him with

work that he loved. Respondent expressed remorse for his conduct and averred that his actions were not motivated by greed or self-interest, and that someone of his education level and professional background would not have engaged in such self-destructive behavior absent some sort of mental stress or emotional affliction. Respondent stated that there was an extensive history of depression on his father's side, and while he saw a therapist and psychiatrist for approximately one year, he stopped doing so because his condition stabilized.

Respondent stated that, in retrospect, he was antisocial and was so obsessed with his views on taxation that he failed to recognize his self-destructive behavior. In addition, he explained that he was in close proximity to the September 11, 2001 terrorist attacks on the World Trade Center and, as a result, his depression returned but he did not seek professional help. Instead, he dealt with his feelings by immersing himself in his law practice and his study of money and taxation.

Respondent recently started seeing a psychiatrist; however, he did not offer any expert testimony or report evincing that he was diagnosed with a mental illness which contributed to his protracted failure to meet his tax obligations.

The Referee found that respondent intentionally failed to meet his tax obligations for almost a decade and by so doing he violated DR 1-102 (a) (3) (22 NYCRR 1200.3 [a] [3]) and RPC rule 8.4 (b) (illegal conduct adversely reflecting on honesty, trustworthiness or fitness as a lawyer); DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) and RPC rule 8.4 (c) (conduct involving dishonesty, fraud, deceit or misrepresentation); and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]) and RPC rule 8.4 (h) (other conduct adversely reflecting on fitness as a lawyer). Accordingly, the Referee sustained charges one through five.

The Referee, however, did not sustain the three charges (charges six through eight) which alleged that respondent improperly threatened tax officials with frivolous litigation during the course of his correspondence with them.

The Referee considered in mitigation that respondent did not act out of greed or dishonesty but was motivated by sincere, albeit misguided, beliefs; he had filed all outstanding tax returns; his failure to meet his tax obligations was not in furtherance of a lavish lifestyle; he had no prior disciplinary history in 22 years of practicing law; he had suffered significant personal, professional, and financial consequences as a result of his misconduct; he cooperated with the Committee; he had

spent most of his professional career representing indigent children and adults, and now represented persons of modest means in Family Court matters on a sliding fee schedule; he presented credible character evidence; and he expressed sincere remorse. In addition, notwithstanding that respondent did not present expert evidence that mental illness contributed to his misconduct, the Referee found that his entry into therapy to more fully understand the root causes of his behavior constituted mitigation.

Thus, the Referee recommended that respondent be suspended from the practice of law for a period of six months, be required to enter into a written agreement with federal tax authorities regarding all back taxes and be required to enter into an additional written agreement with New York State tax authorities if there are any unpaid back taxes for tax years 2012 and 2013.

Oral argument was held before a Hearing Panel. In a report, the Panel confirmed the Referee's liability findings in full, as well as the recommendation that respondent be required to enter into written payment agreements with state and federal tax authorities for any unpaid back taxes, but recommended an increased sanction of a nine-month suspension.

Sanctions for tax related misconduct have ranged from censure to suspensions of varying length depending on the aggravation and mitigation. Historically, this Court publicly censured attorneys convicted of misdemeanor tax offenses, even in cases where there were some aggravating factors (*see e.g. Matter of Eppner*, 62 AD3d 151 [1st Dept 2009] [failure to file for five years where significant unforeseen family expenses coupled with major drop in income]; *Matter of Clark*, 60 AD3d 159 [1st Dept 2009] [public censure based on misdemeanor tax conviction and failure to file federal and state returns; significant mitigation]).

Following *Eppner* in early 2009, this Court began moving away from our earlier precedents where we imposed censures for misdemeanor tax convictions toward one-year suspensions where the evidence in aggravation seemed to outweigh the mitigation (*see e.g. Matter of Roisman*, 89 AD3d 164 [1st Dept 2011] [one-year suspension based on misdemeanor tax conviction; aggravation included failure to file and pay taxes for seven years despite financial ability to do so, and failure to self-report illegal behavior]; *Matter of Rosenberg*, 82 AD3d 85 [1st Dept 2011] [failure to file tax returns and pay taxes for five years,

did not take steps to address tax debt until confronted by authorities]).

More recently, this Court has imposed lesser suspensions for tax related misconduct (*see e.g. Matter of Andrews*, 128 AD3d 197 [1st Dept 2015] [three-month suspension for misdemeanor tax conviction and failure to file tax returns and pay taxes for nine years; while misconduct was protracted, it was nonvenal and mitigated by, inter alia, a 25-year unblemished legal career, family financial pressures, acceptance of responsibility, and payment of over $60,000 in restitution]; *Matter of Racht*, 120 AD3d 156 [1st Dept 2014] [six-month suspension based on misdemeanor tax convictions and failure to file tax returns and pay taxes for eight years; acknowledgment of misconduct, prompt corrective action to make the necessary delinquent filings, safeguards put in place to ensure compliance with ongoing tax obligations, and misconduct was nonvenal and due to a mental block]).

It is obvious that the issue of sanctions for tax related misconduct is very fact dependent. The facts in this case appear most similar to those in *Matter of Racht*, and thus, under all the circumstances presented herein, including the mitigating factors presented by respondent, we find that the deterrent effect of a six-month suspension as recommended by the Referee is an appropriate penalty.

Accordingly, the Committee's petition is granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, but is denied as to the recommendation as to sanction, and respondent is suspended from the practice of law for a period of six months as recommended by the Referee, and until further order of this Court.

Any application for reinstatement should include documentary proof that respondent has entered into agreements with the IRS and New York State tax authorities for payment of any outstanding tax debts.

Finally, respondent's cross motion is granted only to the extent that it seeks confirmation of the Hearing Panel's findings of fact and conclusions of law and recommendation that he be required to enter into written agreements for any back taxes that he owes, and is otherwise denied.

MOSKOWITZ, J.P., FEINMAN, GISCHE, KAPNICK and GESMER, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective the date hereof,

and until further order of this Court (2016 NY Slip Op 92764[U] [2016]). Cross motion granted to the extent of confirming the Hearing Panel's findings of fact and conclusions of law, and otherwise denied (M-3816).